UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 23-CR-325 (TSC) |
| v. : | |
| : | |
| JACK MITCHELL JOHNSON, : | |
| : | |
| **Defendant** : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. Defendant Jack Mitchell Johnson has pleaded guilty to two Class B misdemeanors, a violation of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count Three) and a violation of 40 U.S.C. § 5104(e)(2)(G) (parading, demonstrating, or picketing in any Capitol building) (Count Four). For the reasons set forth herein, the government requests that this Court sentence Johnson to 30 days incarceration on Count One and 36 months' probation on Count Two.[1] The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution.

**I.   Introduction**

Defendant Jack Mitchell Johnson, a 22-year-old sales professional, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful

---

[1] The government will address whether the Court can impose a period of incarceration and probation post-*Little* in a supplemental brief.

1

transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[2]

Johnson pleaded guilty to violations of 40 U.S.C. § 5104(e)(2)(D) and (G). The government's recommendation is supported by the Johnson's decisions to: (1) move a bike rack while on restricted grounds in order to facilitate his access to the Capitol building; (2) continue his path towards the Capitol, despite witnessing chaos on Capitol grounds; (3) enter the Capitol through the East Rotunda doors while an officer was actively trying to close the door to rioters and while alarms were ringing; and (4) take photos and videos inside the Capitol building and post them to his Snapchat account.

The Court must also consider that the defendant's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of Johnson's crime support a sentence of 30 days incarceration, 36 months' probation, 60 hours of community service and $500 in restitution in this case.

---

[2] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

II.     **Factual and Procedural Background**

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary repetition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF No. 25 at 1-4.

*Defendant Johnson's Role in the January 6, 2021 Attack on the Capitol*

On January 5, 2021, Johnson traveled from Bismarck, North Dakota to Washington, D.C. The following day, Johnson attended former President Trump's rally with his brother. After the rally, Johnson and his brother moved with the crowed towards the U.S. Capitol building.

While on the restricted grounds, Johnson pulled a bike rack so that he could walk closer towards the Capitol building. Behind him rioters were breaking down the barricades and police officers were handcuffing another rioter near him. *See* Image 1 and Exhibit 1. While on the grounds, Johnson witnessed chaos, saw police presence, and heard the screams and chants of other rioters around him.



*Image 1: Still Image from Open Source of Johnson Moving the Bike Rack[3]*

---

[3] This still image is from an open-source video and attached as Exhibit 1 (timestamp: 00:00 – 00:32 seconds).

3

At approximately 2:41 p.m., Johnson entered the U.S. Capitol building through the East Rotunda Doors. At the time of Johnson's entry, the alarm was ringing at the door, the glass on the door next to him was cracked, and there were multiple officers present at the door. At least one officer was attempting to close the door at the same time that Johnson entered. *See* Image 2.



*Image 2: Still Image from CCTV of the East Rotunda Doors at Approximately 2:41 p.m.*[4]

While inside the Capitol, Johnson walked through the Rotunda with a blue Trump flag while taking photos and videos near the statutes and around the Rotunda. *See* Image 3. Johnson left the Rotunda and returned to the Rotunda to take more pictures before exiting the Capitol.

---

[4] This still image is from CCTV footage from the East Rotunda Doors at approximately 2:41 p.m. and it is attached as Exhibit 2 (timestamp: 1:00 – 1:15).



*Image 3: Still Image from CCTV of Johnson Inside the Rotunda at Approximately 2:42 p.m.[5]*

At approximately 2:51 p.m., Johnson left the Capitol building through the East Rotunda doors. Johnson was inside the U.S. Capitol building for approximately ten minutes on January 6.

*Social Media Posts*

Johnson made multiple Snapchat posts including videos and photos while at the Capitol on January 6. Some of those photos show Johnson on a balcony watching police officers clear rioters from the Upper West Terrace. *See* Image 4. Johnson also filmed the East Rotunda doors before he entered with the alarms ringing in the background. *See* Image 5.



*Image 4: Still Image From Johnson's Snapchat Account[6]*

---

[5] This still image is from CCTV footage inside the Rotunda at approximately 2:42 p.m. and attached at Exhibit 3 (timestamp 00:22 – 00:45). Johnson is seen filming a video which he later posted to his snapchat account. This video is attached as Exhibit 3A.

[6] This still image is from a video posted from Johnson's snapchat account and attached as Exhibit 4.



*Image 5: Still Image From Johnson's Snapchat Account*[7]

*Johnson's Post-Plea Interview with the FBI*

On September 3, 2024, Johnson was interviewed by the FBI about his conduct on January 6. Johnson admitted to witnessing violence and chaos outside of the Capitol, including seeing people destroy property and people pushing police near the Rotunda Doors. After seeing this, Johnson stated he was curious and he would never be back in Washington D.C. during a historic moment like this so he went inside the building. Johnson admitted that after January 6 he realized his decision to go inside the building was "dumb." Johnson also stated that he believed this event was a threat to democracy and expressed remorse for his actions.

When asked about his text messages from November 2020 to February 2021 and why they were missing from him phone, Johnson explained that he dropped his phone in the toilet and received a new phone. Johnson could not otherwise explain why there were messages before and after this time period still on his phone.

---

[7] This still image is from a video from Johnson's snapchat account attached as Exhibit 5.

*The Charges and Plea Agreement*

On September 20, 2023, the United States charged Johnson by a four-count Information with violating 18 U.S.C. § 1752(a)(1) and (a)(2) and 40 U.S.C. § 5104(e)(2)(D) and (2)(G). On April 26, 2024, pursuant to a plea agreement, Johnson pleaded guilty to the § 5104 counts. By plea agreement, Johnson agreed to pay $500 in restitution to the Architect of the Capitol.

### III.   Statutory Penalties

Johnson now faces a sentencing for violating 40 U.S.C. §§ 5104(e)(2)(D) and (2)(G). As noted by the plea agreement and the U.S. Probation Office, Johnson faces up to six months of imprisonment and a fine of up to $5,000. Johnson must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV.   Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of 30 days incarceration, 36 months' probation, 60 hours of community service, and $500 in restitution.

#### A.   The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Johnson's

7

participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Johnson, the absence of violent or destructive acts is not a mitigating factor. Had Johnson engaged in such conduct, he would have faced additional criminal charges.

One of the most important factors in Johnson's case his notable disregard for police efforts to control the riot. Johnson saw bike racks barriers outside of the Capitol and decided to move past them, going so far as moving a bike rack barrier that was in his way. He admitted to seeing rioters engage in violence with police officers near the Rotunda Doors. He went inside the Capitol building as alarms were ringing and police officers were at the East Rotunda doors clearly trying to shut the doors to prevent rioters from entering. Once inside the building, and having observed the chaos up close, Johnson chose not to leave, but to instead take photos and videos of himself and of different parts of the Capitol, and then later post them on his Snapchat account. Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of 30 days incarceration in this matter.

### B. Johnson's History and Characteristics

As set forth in the PSR, Johnson does not have a criminal history and he has been complaint with the conditions of his pretrial release. ECF 26 at ¶¶ 7, 27. The PSR does not list any serious health problems or substance abuse issues. ECF 26 at ¶¶ 42-48. Currently, Johnson works as a sales professional. ECF 26 at ¶¶ 56-57.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United*

*States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs heavily in favor of a term of incarceration.

Johnson's actions on January 6, 2021, indicate the need for a sentence that provides specific deterrence. Johnson followed his brother, went to Washington D.C., saw the chaos around him, invaded the Capitol while police were at the entrance, took photos and videos while inside, and stayed on Capitol grounds to further film and watch the chaos. Johnson also posted this content on his snapchat. This behavior shows his conduct was not a momentary lapse in judgement, but instead a willful and alarming disregard of the chaos and violence that surrounded him. Although he has expressed remorse, Johnson's actions on January 6 makes it clear that a sentence involving incarceration is needed to successfully deter him from following others and engaging in such conduct in the future.

With the 2024 presidential election approaching and many loud voices in the media and online continuing to sow discord and distrust, the potential for a repeat of January 6 looms ominously. The Court must sentence Johnson in a manner sufficient to deter him, and others generally, from going down that road again.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers.[8] This Court must sentence Johnson based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

---

[8] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

Johnson has pleaded guilty to Counts Three and Four of the Information, charging him with violations of 40 U.S.C. §§ 5104(e)(2)(D) and (2)(G). These offenses are Class B misdemeanors. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however. have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the conduct in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *United States v. Michael Pomeroy*, 22-cr-183 (TSC), the defendant pled guilty to violating 40 U.S.C. § 5104(e)(2)(G). Similar to Johnson, Pomeroy was in front of a crowd that removed police barriers and observed violence before entering the Capitol. Also similar to Johnson, Pomeroy took videos and photos inside the building. This Court imposed a sentence of 30 days' incarceration in that case. Johnson's similar conduct warrants a similar sentence.

In *United States v. Dennis Adams*, 23-cr-396 (TSC), the defendant saw rioters tearing down snow fencing and still decided to enter the building. Similar to Johnson, Adams also saw violence against police while on the Capitol grounds. Adams pled guilty to violating 18 U.S.C. § 1752(a)(1) for his conduct and the court imposed a sentence of 45 days' incarceration in that case. Although Johnson pled to a class B misdemeanor in this case, a period of incarceration similar to Adams is

11

appropriate because of the similar aggravating factors including the disregard for police presence, violence, and barricades around the Capitol building.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

V.    **Restitution**

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[9] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify

---

[9] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

12

a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Johnson must pay $500 in restitution, which reflects in part the role Johnson played in the riot on January 6.[10] Plea Agreement at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023." *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Johnson's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 82.

## VI.    Fine

Johnson's convictions for violations of 40 U.S.C. § 5104(e)(2)(D) and (2)(G) subject him to a statutory maximum fine of $5000. S*ee* 18 U.S.C. § 3571(b). In determining whether to impose a fine, the sentencing court should consider Johnson's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1); *See* U.S.S.G. § 5E1.2(d). Here, Johnson's financial assets set forth in the PSR suggest that Johnson is unable, and is unlikely to become able, to pay a fine.

---

[10] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

13

### VII. Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Johnson to a sentence of 30 days incarceration on Count Three, 36 months' probation on Count Four, 60 hours of community service and $500 in restitution in this case. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Johnson's liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: */s/Nialah S. Ferrer*

NIALAH S. FERRER
Assistant United States Attorney
New York Bar No. 5748462
601 D Street, NW
Washington, D.C. 20530
(202) 557-1490
Nialah.Ferrer@usdoj.gov